IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND ELECTRICAL
INDUSTRY HEALTH FUND, *et al.*,

    *Plaintiffs*,

    v.

    Civil Action No. ELH-12-505

MESCO, INC., *et al.*,

    *Defendants*.

**MEMORANDUM OPINION**

This Memorandum Opinion addresses plaintiffs' Motion for Attorneys' Fees and Expenses (ECF 49, the "Motion" or "Mot."). In the Motion, plaintiffs request $167,295.47 in attorneys' fees and costs, pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(g)(2). *See* Mot. at 1-2.

With the Motion, plaintiffs have submitted a supporting memorandum (ECF 49-1, "Mem."), and an affidavit of Brian G. Esders, Esq., dated March 11, 2014 (ECF 49-2, the "Esders Affidavit" or "Aff."). Defendants have filed a brief in opposition to the Motion (ECF 60, "Opposition" or "Opp."), along with supporting exhibits (ECF 60-1 through 60-3). Plaintiffs have replied (ECF 61, "Reply"), attaching two additional exhibits (ECF 61-1 and 61-2).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will award plaintiffs a total of $123,362.97 in attorneys' fees and costs.

**I. Background**

The facts of this case are set forth in this Court's Memorandum Opinion issued on February 28, 2014 (ECF 47), which is incorporated here. *See also* ECF 48 (accompanying Order); *Maryland Elec. Industry Health Fund v. MESCO, Inc.*, 2014 WL 853237 (D. Md. Feb. 28, 2014). Nevertheless, I will provide a brief background.

Eight plaintiffs, which include seven multiemployer benefit plans (the "Plan Plaintiffs") and one labor union ("Local 24"), filed suit against defendants MESCO, Inc. ("MESCO") and Michael E. Sewell & Associates, Inc. ("Sewell"), pursuant to Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).   *See* ECF 1 (Complaint).   In their Complaint, plaintiffs contended that defendants failed to make required contributions and remittances pursuant to a collective bargaining agreement and other related agreements.   *See id.*   Specifically, plaintiffs alleged that MESCO owed them contributions, liquidated damages, and interest in the amount of $228,810.87.   *See* ECF 35, Exh. 1, ¶ 7.   Plaintiffs also alleged that Sewell owed contributions, liquidated damages, and interest in the amount of $260,633.92.   *Id.* ¶ 8.   Further, plaintiffs maintained that defendants operated as alter egos or as a single entity.   In plaintiffs' view, this connection made each defendant jointly and severally liable for all unpaid contributions, interest, and liquidated damages, which according to plaintiffs totaled $489,444.79.

Plaintiffs moved for summary judgment (ECF 35), which defendants opposed (ECF 44).[1] In the Memorandum Opinion of February 28, 2014, I granted summary judgment in favor of the seven Plan Plaintiffs, but denied summary judgment as to the remaining plaintiff, Local 24.   *See* ECF 47, 48.   The seven Plan Plaintiffs were awarded unpaid contributions, interest, and liquidated damages totaling $453,615.98.   *See id.*   With regard to attorneys' fees, the Memorandum Opinion said: "Although plaintiffs also seek attorneys' fees and costs, they identify no particular amounts sought.   Accordingly, I will defer ruling on the request for attorneys' fees until plaintiffs submit adequate and detailed information, along with authority in support of their particular requests."   ECF 47 at 28 n.16 (citation omitted).

---

[1] Plaintiffs also appended 115 exhibits to their Motion and seventeen exhibits to a reply brief (ECF 45).   For their part, defendants attached four exhibits to their Opposition.

## II. Discussion

In their Motion, plaintiffs maintain that the requested award of attorneys' fees of $160,425 and costs of $6,870.47 is reasonable. *See* Mem. at 3-6. That sum totals $167,295.47. According to plaintiffs, the hourly rate of $225 charged by plaintiffs' counsel, and the total of 713 hours of legal work are appropriate, given the nature of this case. *See* Mem. at 3-4; Aff. ¶ 6. In the Opposition, defendants raise a host of objections to the requested fees. They make several general observations, including that plaintiffs knew that defendants have been "financially distressed"; that defendants "conducted no discovery, and offered minimal resistance to Plaintiffs in the prosecution of their case"; and that defendants' own "total attorneys' fees and costs were under $46,000." *See* Opp. at 1. And, defendants lodge scores of specific challenges to individual time entries for which plaintiffs' counsel seek an award of attorneys' fees.

A. Legal standards

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some degree of success on the merits." *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted). When a court has entered judgment in favor of a plaintiff seeking to recover unpaid contributions in an ERISA action, the court "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D).[2]

"It is for the district court in the first instance to calculate an appropriate award of attorney's fees." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). In determining appropriate attorneys' fees, the court must determine the lodestar amount, defined as

---

[2] The eight plaintiffs apparently paid attorneys' fees "as they were incurred," and thus "all amounts recovered as attorneys' fees" from defendants are payable to plaintiffs. Mem. at 5.

a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008).  A plaintiff seeking attorneys' fees "must show that the number of hours for which [he or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008).

The lodestar is assessed according to the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which were endorsed by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The so-called "*Johnson* factors" are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lopez v. Lawns 'R' Us*, 2008 WL 2227353, at *5 (D. Md. May 23, 2008) (citing *Johnson*, 488 F.2d at 717-19).

Notably, recent case law makes clear that although the lodestar calculation may be informed by the *Johnson* factors, those factors should not supplant the lodestar method.  Chief Judge Chasanow has explained:

> The United States Supreme Court recently appeared to question the approach adopted by the United States Court of Appeals for the Fourth Circuit in *Kimbrell's*—originally set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)—describing it as an "alternative" to the lodestar method and explaining that it provides too little guidance for district courts and places too great of an emphasis on subjective considerations. *See Perdue v. Kenny A.*, 559 U.S. 542, 551-52 (2010) ("[T]he lodestar method is readily administrable, and unlike the *Johnson* approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces

reasonably predictable results." (internal citations omitted)). Nonetheless, "the *Johnson* factors, as opposed to the *Johnson* method, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate"; "[*Perdue*] cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee." *Spencer v. Cent. Servs., LLC*, No. CCB–10–3469, 2012 WL 142978, at **5-6 (D. Md. Jan. 13, 2012) (internal quotations marks and citations omitted).

*Trustees of Nat. Automatic Sprinkler Industry Welfare Fund v. Westland Fire Protection, Inc.*, 2014 WL 824121, at *3 n.2 (D. Md. Feb. 28, 2014).

B.  General considerations and *Johnson* factors

In the Motion, plaintiffs raise a number of arguments pertinent to the *Johnson* factors and, more generally, to the reasonableness of the sum that they seek.  Regarding the difficulty of the issues in this case, plaintiffs assert, *inter alia*, that it was necessary to review "numerous records . . . to establish [an] alter-ego relationship between the Defendants."  Mem. at 4-5.  With respect to the level of attorney skill required, plaintiffs assert that ERISA contribution litigation is "a specialized area of the law," and state that "[t]he attorneys in this case have substantial experience in the collection of delinquent contributions and collection of withdrawal liability for ERISA plaintiffs."  *Id.* at 5.  Plaintiffs add that counsel here "specialize in the representation of employee benefit plans," and their "experience and ability justifies the award of the actual attorneys' fees charged."  *Id.*  However, plaintiffs' counsel concede that this suit did not preclude them from other employment, that no particular time limitations existed, and that ERISA contribution suits are "not generally considered undesirable."  *Id.* at 5-6.

For their part, defendants point to only two *Johnson* factors that, in their view, are the "[m]ost [a]pplicable" to this case.  *See* Opp. at 9-10.  First, defendants maintain that, because plaintiffs are represented by a firm that is "long established and well regarded [in] representing unions and benefit funds," any "novel or difficult issues" are ones "with which the firm is

experienced and familiar." *Id.* at 9.  Second, with regard to the "[t]ime involved and results obtained," defendants acknowledge that plaintiffs' counsel obtained a judgment of $453,615.90.[3] Opp. at 10.  However, defendants also note that they did not challenge plaintiffs' calculation of the appropriate judgment, and add that the parties have settled a dispute concerning "one project involved in the case that was bonded." *Id.*

In my view, the *Johnson* factors, when viewed in their entirety, do not counsel strongly in favor of an enhancement or a reduction of attorneys' fees due under a lodestar calculation. Nevertheless, consistent with the Supreme Court's guidance in *Perdue v. Kenny A.*, 559 U.S. 542, I will take the *Johnson* factors into consideration, including in connection with the specific objections to the lodestar calculation that defendants have raised.

## C.  Hourly rate

Regarding the lodestar calculation, I turn first to the issue of the hourly rate claimed by plaintiffs' counsel.  Plaintiffs assert: "At all times relevant to this case, Plaintiffs were billed at the rate of $225.00 per hour for the services of an attorney."  Aff. ¶ 5.

With respect to a requested hourly rate, the Fourth Circuit follows the "locality rule," by which "'[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'"  *Montcalm Pub. Corp. v. Commonwealth of Virginia*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted).  Ordinarily, "[e]vidence of the prevailing market rate . . . takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).  However, the U.S. District Court for the District of Maryland has adopted Rules and Guidelines for Determining Attorneys' Fees in Certain Cases (the "Guidelines"), which are located in Appendix

---

[3] Defendants cite a figure of $435,615.90, *see* Opp. at 10, but that is apparently a typographical error given that, as indicated, the actual amount was $453,615.90.  *See* ECF 47, 48.

B of the Local Rules of this Court.  "In the District of Maryland, this market knowledge is embedded in the Guidelines." *Gonzalez v. Caron*, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

Defendants do not specify any particular reductions in connection with their challenge to the rates requested by plaintiffs' counsel. *See* Opp. at 8.  Nevertheless, defendants maintain that a reduction in the rates is warranted, in light of plaintiffs' failure to provide sufficient evidence to justify the rates sought. *See id.*  As defendants note, in *Saman v. LBDP, Inc.*, 2013 WL 6410846 (D. Md. Dec. 6, 2013), the court stated that a party must "'produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [they] seek[] an award.'" *Id.* at *3 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).  Such evidence includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 245 (4th Cir. 2009).  However, a party's "failure to include affidavits from independent counsel is not fatal," as "'the court may rely on its own knowledge of the market,'" including by referring to the Guidelines. *Gonzalez*, 2011 WL 3886979, at *2 (citation omitted).  Indeed, in *Saman*, 2013 WL 6410846, at *3, the district court's remedy for the failure to provide such affidavits was a modest reduction of one attorney's hourly rate from the $300 requested to $275, which still fell within the Guidelines range for attorneys with his level of experience.

Appendix B of the Guidelines sets forth advisory fee ranges for attorneys based on years of experience.  The rates "are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," and "may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases."

Guidelines § 3 n.6.  However, the fee ranges are not binding on the Court.  *Id.*; *see also Thomas v. Smith, Dean & Assocs., Inc.*, 2011 WL 3567043, at *2 (D. Md. Aug. 10, 2011) (stating that the Guidelines rates "are neither binding nor definitive").

Although "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges."  *Gonzalez*, 2011 WL 3886979, at *2.  Pursuant to the version of the Guidelines in effect as of July 1, 2011, which governed at the time that counsel's work was completed,[4] the hourly rates are as follows:

a.  Lawyers admitted to the bar for less than five (5) years: $150-190.
b.  Lawyers admitted to the bar for five (5) to eight (8) years: $165-250.
c.  Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-300.
d.  Lawyers admitted to the bar for fifteen (15) years or more: $275-400.
e.  Paralegals and law clerks: $95-115.

As indicated, plaintiffs were charged, and now seek, a rate of $225 per hour for the work of all three attorneys who litigated this case.  *See* Aff. ¶ 5.  Because their levels of experience differ, I will address each lawyer individually.

Corey Smith Bott graduated from law school in 1998 and was admitted to the Maryland Bar that December.  She became a member of this Court in March 1999, and joined Abato,

---

[4] An updated version of the Local Rules, effective July 1, 2014, extended the upper limit of the existing ranges while adding an additional category for lawyers with 20 or more years of experience:

a.  Lawyers admitted to the bar for less than five (5) years: $150-225.
b.  Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.
c.  Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.
d.  Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425.
e.  Lawyers admitted to the bar for twenty (20) years or more: $300-475.
f.  Paralegals and law clerks: $95-150.

Neither plaintiffs nor defendants have submitted supplemental filings addressing the impact, if any, of these revisions on the Court's analysis in this suit.  As discussed, *infra*, the appropriate rates in this case fall within the lower to middle portions of the relevant ranges.  In my view, the amounts awarded to plaintiffs' counsel are appropriate regardless of which version of the Guidelines governs.

Rubenstein & Abato, P.A. ("Abato") that month.  Ms. Bott became a shareholder of Abato in January 2006.  Aff ¶ 3.  As defendants acknowledge, Abato is "long established and well regarded [in] representing unions and benefit funds . . . ."  Opp. at 9.  Given that Ms. Bott had more than ten years of experience (all at Abato) throughout the time she worked on this case, a rate of $225 falls at the bottom of the applicable Guidelines range, which covers attorneys with comparable experience of between nine to fourteen years.  *See* Guidelines § 3(c).  The requested rate of $225 per hour is entirely appropriate with respect to Ms. Bott.

Brian G. Esders is a 2005 law school graduate who was admitted to the Maryland Bar in December 2005.  He became a member of this Court in August 2008 when he joined Abato.  Aff. ¶ 2.  His experience is significantly less than that of Ms. Bott.  I am unpersuaded that the same rate of $225 is appropriate as to Mr. Esders.  Accordingly, his rate will be reduced to $200 per hour, which is still within the middle portion of the applicable Guidelines range.  *See* Guidelines § 3(b).

Megan C. Horn graduated from law school in May 2008.  Ms. Horn was admitted to the Maryland Bar in December 2008, and to the bar of this Court in December 2009.  She was employed by Abato from November 2009 through July 2013.  Aff. ¶ 4.  Notably, in a Report and Recommendation dating from April 2013, then-Magistrate Judge Gauvey of this Court reduced a requested $225 hourly rate for Ms. Horn to $175, on the ground that Ms. Horn had been admitted to the Maryland bar for less than five years "at the time the work was performed."  *Maryland Elec. Industry Health Fund v. RGS Elec., Inc.*, 2013 WL 1726363, at *5 (D. Md. Apr. 18, 2013).[5] Plaintiffs acknowledge that decision, but observe that Ms. Horn "has five years of experience as of December, 2013."  Reply at 3 n.1.  Nevertheless, all of Ms. Horn's work in the present case

---

[5] Judge Gauvey's Report and Recommendation was adopted in full.  *See* Civil Case ELH-12-2644 (ECF 15, May 15, 2013).

predated July 2013, and thus was completed before she had attained five years of experience as a member of the Maryland bar.  *See* Aff. at 2-36.  In my view, an hourly rate of $175, which falls squarely within the Guidelines range, is appropriate as to Ms. Horn.  *See* Guidelines § 3(a).

D.  General objections to time billed

Defendants offer a number of general objections to plaintiffs' requested attorneys' fees. For one, defendants argue that plaintiffs have provided "insufficient documentation" in support of their fee request.  Opp. at 6.  Defendants characterize plaintiffs' records as "vague" and "incomplete," in part because plaintiffs use "block reporting," in which multiple tasks were completed and documented in connection with a single time entry.  *Id.*[6]  Because of that billing approach, defendants assert that they "often cannot tell exactly how much time is spent in research, or other discrete and objectionable issues."  Opp. at 6.  As a remedy, defendants "request that the Court, in its discretion, deny a substantial part of [the Motion] every time an entry where the time spent on a discrete activity cannot be determined, as a result of the inadequate documentation."  *Id.* at 7.

In general, courts have permitted parties seeking attorneys' fees to use block billing, at least where the entries are reasonably descriptive and the tasks all pertain to the case or claims for which attorneys' fees are sought.  *See, e.g.*, *Westmoreland v. Prince George's County, Md.*, 2013 WL 6629054, at *16 (D. Md. Dec. 17, 2013) ("Although the records reflect that an appreciable amount of block-billing took place, they correspond to the procedural history of the case and are reasonably detailed overall."); *Saman*, 2013 WL 6410846, at *4 n.10.  However, courts have reduced fee awards where counsel used block-billing to record multiple tasks, only a

---

[6] As an example, defendants note that on December 27, 2011, an attorney recorded 2.5 hours devoted to multiple tasks: "research[ing] alter ego and double breasting claims; compar[ing] payroll records with remittance reports; draft[ing] office memorandum regarding same."  Opp. at 6.

portion of which fell within the scope of reimbursable work.  *See, e.g.*, *Miller v. U.S. Foodservice, Inc.*, 2006 WL 2547212, at *2 (D. Md. Aug. 30, 2006); *see also Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.*, 2011 WL 6444980, at *6 (D. Md. Dec. 20, 2011).

When it is impossible to determine the precise amount of time spent on reimbursable and non-reimbursable work, the Court will have little choice but to estimate the amount of time for which attorneys' fees are warranted.  However, I am not persuaded that any generalized reduction based on plaintiffs' use of block billing is warranted here.

Defendants also point to several aspects of this litigation that, in their view, justify a reduction in attorneys' fees.  They assert:  "A starting point for the Court's analysis should be the fact that Plaintiffs knew that they were suing impecunious, or nearly impecunious, Defendants." Opp. at 9.  Defendants also observe that they "undertook no independent discovery, engaged in only the most necessary motions practice, and as the Court noted in granting the motion for summary judgment, did not undertake extensive research in supporting their positions."

This passive approach, which defense counsel readily acknowledges, was apparent from defendants' opposition to plaintiffs' summary judgment motion (ECF 44).  As I noted in my Memorandum Opinion: "Conspicuously absent from defendants' Opposition [to plaintiffs' summary judgment motion] is any authority in support of their claims; the eight-page Opposition does not cite a single case or statutory provision."  ECF 47 at 13.  This approach may have required plaintiffs (and certainly required the Court) to engage in additional work, by searching for potentially relevant authority in an effort to determine the merit (or lack thereof) of defendants' arguments. Put another way, defendants did not concede, and even an unopposed summary judgment motion cannot be granted, merely because it is unopposed.  Nor did defendants file a motion disposing of the claims brought by Local 24, until prompted to do so by the Court.  *See* ECF 53 (Order); ECF 56 (defendants' motion for summary judgment as to Local 24).

More generally, defendants' arguments regarding their approach ring hollow in light of their decision to litigate this case. Indeed, defendants' approach prolonged the litigation and contributed to uncertainty as to how the claims of Local 24 would be resolved. Conceivably, if defendants believed that recovery of any judgment by plaintiffs would be futile, defendants could have declined to litigate and instead permitted plaintiffs to obtain a default judgment. Instead, defendants chose to litigate, through the summary judgment stage, which necessarily taxed the resources of plaintiffs (and the Court). It is also notable that, notwithstanding defense counsel's assertions about their passive approach to discovery and motions practice, they apparently accrued nearly $46,000 in attorneys' fees and costs—far less than what plaintiffs now request, but still a significant sum. *See* Opp. at 1.

In addition, a number of defendants' objections relate to plaintiffs' efforts to establish an alter ego relationship between MESCO and Sewell. Indeed, a central contention in plaintiffs' motion for summary judgment (ECF 35) was the claim that MESCO and Sewell are jointly and severally liable for the damages sought, and plaintiffs devoted the lion's share of their summary judgment brief to establishing the connection between defendants. *See* ECF 35-1 at 9-31 (arguing, *inter alia*, that MESCO and Sewell (1) had multiple, common business locations; (2) had common employees; (3) had numerous common projects, with Sewell periodically paying wages on behalf of MESCO, despite contractual provisions preventing MESCO from assigning work to others, and with MESCO representing that work performed by employees of Sewell was performed by its own employees; (4) paid employees interchangeably; (5) had common financial ties; and (6) shared the same fax number).

In their opposition to summary judgment (ECF 44), defendants offered no response to plaintiffs' contention that MESCO and Sewell are alter egos or a single employer. As plaintiffs

observed in their reply brief: "The Defendants have not disputed that the companies operated as alter egos and/or a single employer; neither have they disputed any of the overwhelming factual evidence establishing that the companies operated as alter egos and/or a single employer." ECF 45 at 3; *see also id.* at 4 ("The Defendants do not, however, dispute that the companies operated as alter egos and/or a single employer and owe contributions on that basis.").   In my Memorandum Opinion, I concluded that because defendants did not challenge plaintiffs' contention regarding their status as alter egos or a single employer, "they have conceded that point."  ECF 47 at 12.

In their Reply regarding the attorneys' fees issue, plaintiffs maintain: "The legal work required to prove the alter-ego status of companies is difficult due to the fact that the evidence largely consists of the business records of those companies," which required plaintiffs "to conduct significant research and review extensive discovery."  Reply at 1-2.  Significantly, there is no suggestion that defendants had conceded the alter ego issue earlier in this litigation.  Nor is it apparent that establishing defendants' status as either alter egos or a single employer was an irrelevant or otherwise improper theory for plaintiffs to pursue.

Notably, courts have concluded that defendant employers found to be alter egos of one another or to otherwise constitute a single employer may be held jointly and severally liable for unpaid ERISA contributions.  *See Trs. of Nat. Automatic Sprinkler Indus. Pension Fund*, 111 F. Supp. 2d at 719 (two companies constituting a single employer are "jointly and severally liable for delinquent [employee benefit fund] contributions"); *accord Laborers' Dist. Council Health and Welfare Trust Fund No. 2 v. Comet Contracting, LLC*, 2006 WL 2085847, at *7-11 (D. Md. July 25, 2006) (defendants jointly and severally liable for unpaid contributions, liquidated damages, and interest); *see also Vance v. NLRB*, 71 F.3d 486 (4th Cir. 1995) (affirming an

NLRB determination that two companies constituting a single employer were jointly liable for damages resulting from unfair labor practices).   As such, I decline to impose a reduction of fees based on plaintiffs' efforts to establish the relationship between defendants.   Nevertheless, it is appropriate to scrutinize the time that plaintiffs' counsel devoted to specific tasks, including those tasks associated with the alter ego issue, to assess the reasonableness of the fee request.

E.  Specific objections to time billed

In addition to their general objections, defendants assert specific objections to nearly half of the individual time entries submitted by plaintiffs.   In connection with the Motion, plaintiffs have supplied a chart listing 353 individual time entries, which describe the tasks completed by counsel.   Consistent with a requirement found in Guidelines § 1(b), plaintiffs have organized those entries into eight categories: (1) "Case Development," which totals 232.75 hours, Aff. at 2-14; (2) "Pleadings," which totals 35.5 hours, *id.* at 15-17; (3) "Interrogatories," which totals 69 hours, *see id.* at 17-21; (4) "Depositions," which totals 54.25 hours, *see id.* at 22-24; (5) "Motions Practice," which totals 293 hours, *see id*. at 24-33; (6) "Attending Hearings," which totals 10 hours, *see id.* at 33-35; (7) "ADR," which totals 17 hours, *see id.* at 35-36; and (8) "Fee Petition Preparation," which totals 1.5 hours, *see id.* at 36.   These eight categories total 713 hours of attorney time; multiplying that total by the requested hourly rate of $225 yields the sum sought, $160,425.   *See* Aff. ¶¶ 5-7.[7]

For their part, defendants have taken the chart submitted by plaintiffs in the Esders Affidavit and added a column, titled "Defendants' Objection," which, as the name indicates,

---

[7]   In general, a party seeking attorneys' fees "has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks."   *CoStar Group*, *supra*, 106 F. Supp. 2d at 788 (citations omitted).   "However, tables drawn from contemporaneous records can suffice if 'they provide an adequate basis for determining whether the hours claimed were reasonably expended.'"   *Gonzalez, supra*, 2011 WL 3886979, at *3 (quoting *CoStar Group*, 106 F. Supp. 2d at 789).

contains their objections.  Opp. at 9.  Notably, defendants include only six of the eight categories in their annotated chart; they apparently raise no specific objections to the fees sought in the "Pleadings" or "Attending Hearings" categories.  Opp. Exh. 1.  Further, in the Opposition, defendants indicate that the "Defendants' Objection" category "sets forth a reasonably detailed objection to each time entry for which Defendants object."  *Id.* at 9.  Although I need not strictly limit my review of plaintiffs' Motion to those entries that defendants have challenged, it is notable that courts have declined to review those entries that a party opposing an attorney's fee motion has not specifically addressed.  *See, e.g.*, *Cross v. Fleet Reserve Ass'n Pension Plan*, 2010 WL 3609530, at *6 (D. Md. Sept. 14, 2010) ("[T]his Court will only address the Defendants' specific challenges and not its generalized objections to the time entries."); *Thompson v. United States Dep't of Housing & Urban Dev.*, 2002 WL 31777631, at *10 (D. Md. Nov. 21, 2002) (courts "will not review any challenged entry in the bill unless the challenging party has identified it specifically and given an adequate explanation for the basis of the challenge").

In their Reply, plaintiffs have added a further column to the chart, titled "Plaintiffs' Response," in which they address nearly all of defendants' objections.  *See* ECF 62-2 ("Chart").[8]  Significantly, defendants raise no specific challenge to 183 of the 353 entries found in the billing records plaintiffs have submitted.  Taken together, these unchallenged entries total nearly 400 hours, or more than half of the 713 hours for which plaintiffs seek attorneys' fees.

Before I address defendants' specific objections, several other observations are worth noting.  For one, in some instances, plaintiffs provide no response to at least a portion of defendants' objections.  *See, e.g.*, Chart at 6 (no response offered for objection regarding 8/20/12

_____

[8]  In this Memorandum Opinion, I will cite to the version of the chart attached to plaintiffs' Reply (the "Chart"), as it contains defendants' objections as well as plaintiffs' responses.

entry, claiming that "reviewing and revising a letter is duplicative of another lawyer's efforts"). By the same token, some objections by defendants target only a portion of the tasks described in a single entry. *See, e.g.*, Chart at 13 (defendants challenge portion of 1/31/13 and 2/6/13 entries devoted to review of contracts); Chart at 17 (defendants challenge portion of 9/13/12 and 10/16/12 entries spent on "office conference[s]"). In other words, there is at least some small measure of agreement between the parties regarding a handful of the entries to which defendants object. I also note that defendants' objections and plaintiffs' responses vary in their specificity, and in some instances neither the objection nor the response is particularly insightful. *See, e.g.*, Chart at 8 (objection to 9/20/12 entry reads: "Excessive Time"; response asserts: "Time not excessive"). And, as discussed previously, plaintiffs' use of block billing requires some estimation on the part of the Court when reducing the reimbursable time. With these limitations in mind, I turn to defendants' specific objections.

1. Denied motions

Defendants challenge plaintiffs' request for attorneys' fees related to two motions that the Court denied. Courts have adopted differing approaches as to whether a prevailing party may recover fees related to unsuccessful motions. *Compare Cross v. Fleet Reserve Ass'n Pension Plan*, 2010 WL 3609530, at *8 (D. Md. Sept. 14, 2010) (rejecting argument that plaintiffs should not be compensated for time spent on two unsuccessful motions, as "the hours spent on these activities does not appear excessive and these efforts—though unsuccessful—were not unreasonable or in bad faith") *and Durham v. Jones*, 2012 WL 3985224, at *8 (D. Md. Sept. 10, 2012) (declining to require deduction of hours spent on unsuccessful motion for sanctions, as "such hours were expended in furtherance of the litigation of the case as a whole and centered on a common core of facts and related legal theories") *with Dorsey v. TGT Consulting, LLC*, 2014

WL 458999, at *5 (D. Md. Feb. 4, 2014) (denying attorneys' fees for several unsuccessful motions that court deemed to be unrelated to the successful resolution of the suit).

### a.  Motion to Amend

Defendants challenge entries pertaining to plaintiffs' "Motion for Leave to File First Amended Complaint" (ECF 24, the "Motion to Amend"), on the ground that the Motion to Amend was denied.  *See* Chart at 22-23.  In the Motion to Amend, filed on February 7, 2013, plaintiffs asserted that they "recently discovered evidence that Masters Electric, Inc., is operating and has operated as an alter ego and/or successor or parallel corporation to Defendants," and thus sought leave to file an amended complaint "joining Masters Electric, Inc. as a defendant."  *Id.* at 1-2.  Defendants opposed the Motion to Amend, on the grounds that plaintiffs had not shown good cause for the amendment, which would prejudice defendants, and that amendment would be futile.  *See* ECF 28.

Following a telephone hearing on April 19, 2013, the Motion to Amend was denied.  *See* ECF 33 (Order confirming denial of Motion to Amend).  In light of that result, and the fact that the Motion to Amend amounted to an attempted expansion of the lawsuit, rather than an effort in furtherance of the claims on which plaintiffs prevailed, attorneys' fees will not be awarded for time devoted to the Motion to Amend.

### b.  Motion to Strike

Defendants challenge the time that plaintiffs devoted to the "Motion To Strike The Material Change To Deposition Testimony Of James W. Conkel, Jr." (ECF 34, "Motion to Strike"), which defendants opposed (ECF 36).  Defendants maintain that no fees should be awarded because the Motion to Strike was unsuccessful.  *See, e.g.*, Chart at 19-20.  Plaintiffs

counter that the work of counsel regarding the Motion to Strike "was reasonable, despite [the] ultimate outcome." *See id.*

At his deposition, Mr. Conkel testified that he had worked at both MESCO and Sewell. *See* ECF 34-2 at 11-14 (deposition transcript). Following his deposition, Mr. Conkel revised his response to a question asking whether he had been an officer of MESCO. *See* ECF 34-3 at 1 (errata sheet).[9] In the Motion to Strike, plaintiffs "request[ed] that the material change to Mr. Conkel's testimony be stricken," and asked the Court to direct the deponent "to amend his errata sheet to remove the material change." ECF 34-1 at 5. According to plaintiffs, the testimony at issue in the Motion to Strike was "relevant to the common supervisory and managerial control between Mesco and Sewell and Associates." ECF 34-1 at 4. Because, at the summary judgment stage, defendants "d[id] not challenge plaintiffs' argument that MESCO and Sewell functioned as a single employer or as alter egos of one another," I concluded that the dispute concerning the change to the deposition transcript was "effectively moot," and I denied the Motion to Strike on that basis. ECF 47 at 31; *see also* ECF 48 (Order denying Motion to Strike as moot).

The Motion to Strike pertained to a central issue—the alleged alter ego relationship between the two defendants—which defendants had not conceded at the time the Motion to Strike was filed. Nor was the legal argument advanced in the Motion a frivolous one; as I noted in the Memorandum Opinion, "courts have differed in the latitude granted to deponents seeking to alter their testimony," and the Fourth Circuit had not resolved the issue. *See* ECF 47 at 30. At the same time, in light of the voluminous evidence that plaintiffs submitted in connection with

---

[9] Specifically, at his deposition Mr. Conkel was asked whether he had been an officer of MESCO, and he responded: "Yes." ECF 34-2 at 14. Subsequently, Mr. Conkel completed an errata sheet for his deposition, in which he revised his answer of "Yes" to "By title only." *See* ECF 34-3 at 1 (errata sheet). The errata sheet did not supply a reason for the change. Upon further inquiry, Mr. Conkel explained in a handwritten addition to the errata sheet: "The reason for this change is I misspoke by saying I was an officer of the company, only by title was I considered an[] officer of MESCO."

their summary judgment motion, it is not clear whether a revision made by Mr. Conkel to one response would have had any material impact on the Court's analysis, even if defendants had opposed plaintiffs' alter ego argument. In my view, a 25 percent reduction in the time devoted to the Motion to Strike is reasonable.

2. Intraoffice conferences

Defendants challenge a number of entries reflecting time devoted to intraoffice conferences. *See, e.g.*, Chart at 3, 4, 6, 15, 17, 22. They have identified approximately 15 entries that, at least in part, include time devoted to an office conference, totalling approximately 17.5 hours.

Regarding intraoffice conferences, Guidelines § 2(d) reads:

Generally, only one lawyer is to be compensated for . . . intraoffice conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer. Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

Significantly, because all the entries at issue are block-billed, only a portion of the time recorded for each entry was spent on an office conference. As a result, the total time devoted to office conferences appears to be well below the total of 17.5 hours reflected in those entries. To be sure, office conferences, and other forms of intraoffice communication, will be unnecessary where a case is handled by only one attorney. At the same time, however, staffing a case with several lawyers does not necessarily result in duplicate work. Rather, each lawyer may work on only a portion of the case. And, because less experienced lawyers are entitled to lower billing rates, both as a general matter (as reflected in the Guidelines) and in the present case, the involvement of such lawyers may actually reduce the overall lodestar sum. In any event,

because the time spent on office conferences appears eminently reasonable in a case of this duration, no reduction is required.  *Cf. Kabore v. Anchor Staffing, Inc.*, 2012 WL 5077636, at *6 (D. Md. Oct. 17, 2012) (concluding that 50 hours was "not an unreasonable amount of time for two partners and a paralegal to spend on internal meetings over the course of thirteen and a half months").

### 3. Office memoranda

Defendants challenge a number of entries reflecting the drafting of "office memoranda." *See, e.g.*, Chart at 4, 5, 22.  They argue:  "Plaintiffs' counsel apparently communicate primarily through office memoranda, generated on virtually every topic for which time is spent, and to which Defendants object *in toto* as being excessive and unnecessary."  Opp. at 6.  Defendants challenge only a portion of the entries evidencing the drafting of office memoranda.  Notably, those challenged entries total just 8.5 hours, and all but one of those entries are block-billed, indicating that the amount of time devoted to the actual drafting of memoranda was solidly below that sum.

In my view, plaintiffs' billing records do not evidence any excessive time related to the drafting of "office memoranda."  Nor is it apparent that other entries pertaining to the review of office memoranda written by others are improper.  Rather, office memoranda would appear to be an appropriate means for communicating among counsel, and for, *inter alia*, documenting research findings and maintaining a record of case developments over the course of litigation that spanned several years.  In light of these considerations, fees associated with the challenged entries pertaining to office memoranda will not be reduced.

Defendants also insist that plaintiffs "appear to have spent huge amounts of time researching and generating office memoranda associated with the alter ego issue, a particular

waste since they knew before they filed the lawsuit that one of the companies was dissolved and without assets, and that the other company was in the process of going out of business." Opp. at 6. However, as indicated, it is not apparent that defendants conceded the alter ego issue at any time prior to filing their opposition to plaintiffs' summary judgment motion (ECF 44). Nor have defendants shown that plaintiffs' efforts in pursuing an alter ego theory were a "waste," as defendants assert. A fee reduction is unwarranted.

#### 4. Attorney review overlapping with accountant/auditor work

Defendants object to six of seven entries dating from September and October 2012, which total between 26 and 41 hours, for time devoted to a review of certain payroll records. *See* Chart at 8, 10. According to defendants, because "accountants/auditors" were responsible for this task, plaintiffs should not recover for attorney time that was also spent reviewing payroll records. *See id.* Plaintiffs counter that the "[r]eview of [the] records by attorneys for litigation purposes was necessary and reasonable." *See id.*

It is not apparent that plaintiffs have sought any reimbursement from defendants for work completed by "accountants/auditors" that was purportedly duplicative of counsel's work. And, even if accountants or auditors had the primary responsibility for reviewing the payroll records, plaintiffs' counsel may well have had good reason, as they insist, for completing an independent review of certain records for litigation purposes. Because I am not persuaded that defendants have shown how the work completed by counsel was either duplicative or unnecessary, no reduction will be made in connection with this work.

#### 5. Review of contracts

Defendants challenge entries from January 2013 that pertained at least in part to a review of "contracts for electrical work produced by defendant companies in discovery." *See* Chart at

12-13.  According to defendants, the content of the contracts had no bearing on the ERISA issues in this suit.  *See id.* at 12.  Plaintiffs counter that the contract review was "relevant to [the] alter-ego issue," insofar as it was necessary to determine "which companies both Defendants performed work for."  *See id.* at 12-13.  Moreover, plaintiffs assert: "Due to [the] extremely large quantity of documents provided by Defendants," the time that counsel devoted to this review work "was reasonable and necessary."  *See id.*; *see also* Reply at 7 (noting that defendants "provided over 30 boxes of records in response to discovery requests" and, unlike defense counsel, had to "parse through these extensive records without aid of the entity that created the records").

Defendants do not object to *all* of counsel's time spent reviewing the contracts; they raise no challenge to three entries from January 18 through 22, 2013, which reflect approximately 10 to 15 hours of such work.  As for the entries that defendants have challenged, block-billing makes it impossible to discern the exact total, but it appears that between 25 and 45 hours would have been devoted to the contract review work.  Overall, then, plaintiffs have sought fees for between 35 and 60 hours of contract review work.

Notably, plaintiffs' counsel apparently did not enlist the assistance of a less-experienced attorney or paralegal in connection with what was a labor-intensive document review.  And, even assuming that the review was necessary, neither party has provided clear guidance as to a reasonable duration or scope of this review.  In light of these considerations, I am persuaded that a 50 percent reduction in the overall time devoted to this review is appropriate.

6.  Further deductions

The Court has undertaken a careful review of the entries that defendants have challenged, including those entries that do not fall squarely within one of the categories already discussed

above.  Common objections by defendants include claims that the entries are vague or the time spent was either excessive or duplicative.

Moreover, according to defendants, plaintiffs recorded a minimum of 15 minutes, or 0.25 hours, for tasks that would have taken less time.  Opp. at 7.  Regarding that contention, I agree with plaintiffs that the use of 15-minute increments is not, on its own, a sufficient basis for rejecting such entries.  In *Eastern Associated Coal Corp. v. Director, Office of Workers' Compensation Programs*, 724 F.3d 561 (4th Cir. 2013), the Fourth Circuit rejected an argument that a court should disallow entries billed in quarter-hour increments absent "'proof that it took fifteen minutes to perform each and every task alleged,'" because such a requirement "would impose undue burdens not required by law."  *Id.* at 576 (quoting party's argument).

To be sure, reliance on quarter-hour billing increments creates a risk that a prevailing party will claim attorneys' fees for tasks that, in reality, took less than 15 minutes to complete. However, rather than voiding entries reflecting 15 minutes of attorney work on that basis alone, in my view the more appropriate approach is to scrutinize all entries, including those showing 15 minutes of work, to assess whether the time allotted appears to be proportional to the task described.  *See id.* (acknowledging the possibility that "the practice of quarter-hour billing may lead to overbilling" but adding that "the incidence of overbilling is not a concern unique to the use of quarter-hour billing increments").

In general, defendants' remaining objections are unpersuasive, based on the contents of the entries and/or the responses that plaintiffs have offered.  Nevertheless, I agree that reductions are warranted with respect to the following entries, for which, in my view, the stated time is excessive in light of the attorney tasks as described by plaintiffs:

| Date | Attorney Name | Narrative | Time Claimed | Time Allowed | Category |
|---|---|---|---|---|---|
| 8/21/2012 | M. Horn | prepared for review of documents produced by company; researched copying services; conference with copying service; conference with counsel for general contractor regarding records of time worked by employees of company | 2.25 | 1 | Case Developments |
| 9/18/2012 | C. Bott | reviewed proposed joint motion for extension of time | 1 | 0.25 | Motions Practice |
| 9/20/2012 | M. Horn | reviewed Order granting Joint Motion for Extension of Discovery and Dispositive Motion deadlines | 0.25 | 0 | Motions Practice |
| 6/6/2013 | M. Horn | reviewed and revised Reply to Opposition to Motion to Strike; filed same; reviewed Notice of improper filing; refiled same | 1.5 | 0.5 | Motions Practice |

Additionally, I will deduct 0.5 hours for an entry dated 11/8/2012, as well as the remaining portion of an already-reduced entry of 0.75 hours dated 6/3/2013, because the initials that plaintiffs provided, "MRM," do not correspond to any of the three attorneys they have identified.

F.  Unsuccessful claims of Local 24

A final issue regarding attorneys' fees, and one not addressed by the parties, is whether any reduction is warranted in light of plaintiffs' failure to prevail as to the claims brought by Local 24.  As indicated, summary judgment was granted in favor of the seven Plan Plaintiffs, but denied as to Local 24.  *See* ECF 47, 48.  Defendants subsequently filed a motion for summary

judgment as to Local 24's claims, *see* ECF 56, and plaintiffs voluntarily dismissed the claims of

Local 24 before the Court addressed defendants' motion.  *See* ECF 57, 58.

Regarding cases in which a party seeking attorneys' fees has prevailed on some but not

all claims, the Fourth Circuit has said:

> [A] district court should first identify the number of hours reasonably expended
> on the litigation and multiply that number by a reasonable rate.  The court then
> should subtract fees for hours spent on unsuccessful claims unrelated to
> successful ones.  Once the court has subtracted the fees incurred for unsuccessful,
> unrelated claims, it then awards some percentage of the remaining amount,
> depending on the degree of success enjoyed by the plaintiff.

*Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002) (internal citations omitted).  *See*

*Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("Where the plaintiff has failed to prevail on a

claim that is distinct in all respects from his successful claims, the hours spent on the

unsuccessful claim should be excluded in considering the amount of a reasonable fee.  Where a

lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his

attorney's fee reduced simply because the district court did not adopt each contention raised.").

In other words, "[w]hen successful claims are unrelated to unsuccessful claims, it is not

appropriate to award fees for the latter.  When, however, all claims 'involve a common core of

facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making

it difficult to divide the hours expended on a claim-by-claim basis." *Brodziak v. Runyon*, 145

F.3d 194, 197 (4th Cir. 1998) (quoting *Hensley*, 461 U.S. at 435) (internal citations omitted).

Further, "[e]ven where claims are deemed to be interrelated, if a plaintiff has achieved only

partial success, 'the product of hours reasonably expended on the litigation as a whole times a

reasonable hourly rate may be an excessive amount.'" *Essex v. Randall*, 2006 WL 83424, at *4

(D. Md. Jan. 11, 2006) (quoting *Hensley*, 461 U.S. at 436).

As explained at length in this Court's Memorandum Opinion, plaintiffs failed to prevail as to Local 24's claims because the collective bargaining agreement to which defendants were bound had required arbitration of disputes between Local 24 and employers. *See* ECF 47. However, defendants have not requested any reduction in attorneys' fees based on Local 24's unsuccessful claims. And, in any event, it is far from clear what fraction of plaintiffs' counsel's time could be viewed as pertaining only to Local 24's claims, and not to the claims of the Plan Plaintiffs. Accordingly, no reduction is warranted based on the disposition of Local 24's claims.

G.  Total attorneys' fees and costs

As indicated, plaintiffs request attorneys' fees based on 713 hours of work, at a rate of $225 per hour. In the Motion, plaintiffs seek fees for 138.75 hours of work performed by Ms. Bott; 13.25 hours by Mr. Esders; and 559.75 hours by Ms. Horn. Because I conclude that different billing rates are warranted, it is necessary to differentiate among the reductions pertaining to each attorney. In sum, the adjustments discussed above result in a revised total of 626.7 hours of work, which includes 129.9 hours of work performed by Ms. Bott; 13 hours by Mr. Esders; and 483.8 hours by Ms. Horn. When those figures are multiplied by each of their respective billing rates, a revised attorneys' fee award of $116,492.50 results.

Plaintiffs also seek $6,870.47 in costs, which include a filing fee ($350.00); copy charges relating to discovery ($6,334.10); witness fees ($106.37); and a private process service fee ($80.00). *See* Aff. ¶ 8. Because the amounts sought are reasonable, no deduction is required.

H.  Joint and several liability

A remaining question is the assignment of liability for the attorneys' fee award between the two defendants. As indicated, employers that are found to be alter egos or to constitute a single employer may be held jointly and severally liable for unpaid ERISA contributions. *See*

*Trs. of Nat. Automatic Sprinkler Indus. Pension Fund*, *supra*, 111 F. Supp. 2d at 719; *Laborers' Dist. Council Health and Welfare Trust Fund No. 2*, *supra*, 2006 WL 2085847, at *7-11; *see also Vance*, *supra*, 71 F.3d 486.   In my view, the same approach to liability is appropriate in the context of attorneys' fees, and thus defendants will be jointly and severally liable for the attorneys' fees and costs awarded to plaintiffs.

### III.  Conclusion

For the forgoing reasons, plaintiffs' Motion is granted, in part.   Specifically, plaintiffs will be awarded a total of $123,362.97 in attorneys' fees and costs.

A separate Order follows, consistent with this Memorandum Opinion.

Date:   September 16, 2014                    _____/s/_____
                                                          Ellen Lipton Hollander
                                                          United States District Judge